1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

8

## SOUTHERN DISTRICT OF CALIFORNIA

9

10  MICAH A. HARRIS,                              CASE NO. 09-CV-503 - IEG (AJB)

11                          Petitioner,          ORDER:

12      vs.                                      (1) ADOPTING IN PART REPORT
                                                 AND RECOMMENDATION;
13
                                                 (2) DENYING AND DISMISSING
14  M. MARTEL, Warden; and JERRY                 PETITION FOR WRIT OF HABEAS
    BROWN, the Attorney General of the State     CORPUS; and
15  of California,
                                                 (3) GRANTING CERTIFICATE OF
16                          Respondents.          APPEALABILITY.

17

18

19         Currently before the Court is Micah A. Harris's ("Petitioner") Petition for Writ of Habeas

20  Corpus pursuant to 28 U.S.C. § 2254 ("Petition"). Petitioner challenges his conviction in the Superior

21  Court for the County of San Diego, case number SCD 197551, for torture, mayhem, assault with intent

22  to commit a specified sex act (attempted rape), and assault by means of force likely to produce great

23  bodily injury. Respondent filed an answer, [Doc. No. 9], and lodged the relevant portions of the state

24  record. The Court referred the matter to Magistrate Judge Anthony J. Battaglia, who issued a Report

25  and Recommendation ("R&R") recommending the Court deny and dismiss the Petition on the merits.

26  [Doc. No. 14]. Petitioner subsequently filed his objections to the R&R. [Doc. No. 16]. Having

27  considered the R&R and Petitioner's objections, the Court hereby: (1) ADOPTS IN PART the R&R;

28  (2) DENIES and DISMISSES the Petition; and (3) GRANTS a certificate of appealability.

**BACKGROUND**

**I.      Factual background**

The Court adopts the Magistrate Judge's detailed factual background, (see R&R, at 2-6), which in turn takes the facts from the Court of Appeal's opinion in People v. Harris, No. D049578, 2008 WL 2154401 (Cal. Ct. App. 2008) (hereinafter, "Lodgment 6"). As did the Magistrate Judge, the Court presumes these factual determinations are correct pursuant to 28 U.S.C. § 2254(e)(1).

**II.     Procedural background**

On August 1, 2006, a jury found Petitioner guilty of torture (count one), mayhem (count two), assault with intent to commit a specified sex act (count three), and assault by means of force likely to produce great bodily injury (count five). (Lodgment 2.) The jury found the great bodily injury allegation to be true in count five. (Id.) The jury returned a not guilty verdict on the attempted rape charge and found the great bodily injury allegations in counts three and four not to be true. (Id.) The judge sentenced Petitioner to an indeterminate life term with the possibility of parole on torture, a four year concurrent middle term on mayhem, and a stayed term on the remaining counts. (Lodgment 3.) On October 2, 2006, Petitioner filed a notice of appeal. (Lodgment 4.) The Court of Appeal affirmed the judgment. (Lodgment 6.) On August 27, 2008, the California Supreme Court denied the petition for review without comment or citation. (Lodgment 7.) Petitioner timely filed his Petition on March 13, 2009, and Respondent answered on August 7, 2009. [Doc. No. 9]. The Court referred the matter to Judge Battaglia, who recommended the Court deny and dismiss the Petition on the merits. [Doc. No. 14]. Petitioner subsequently filed his objections to the R&R. [Doc. No. 16].

**III.    Petitioner's claims**

Petitioner asserts three grounds for relief: (1) the introduction of evidence of prior uncharged sexual offenses under Section 1108 of the California Evidence Code ("Section 1108") violated his constitutional right to due process and equal protection, and the trial court abused its discretion in admitting that evidence under Section 352 of the Evidence Code ("Section 352"); (2) the evidence was insufficient to support a conviction beyond a reasonable doubt for torture under Section 206 of the California Penal Code ("Section 206"); and (3) the trial court deprived him of his Sixth Amendment right to confrontation by improperly restricting his ability to cross-examine an adverse witness.

1

**LEGAL STANDARD**

2       A federal court may grant a petition pursuant to Section 2254 only if the state court's action

3   was "contrary to, or involved an unreasonable application of, clearly established Federal law, as

4   determined by the Supreme Court of the United States," or "was based on an unreasonable

5   determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C.

6   § 2254(d); Williams v. Taylor, 529 U.S. 362, 403, 412-13 (2000).

7       A state court's decision is "contrary to" clearly established federal law if the state court (1)

8   "arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law" or (2)

9   "decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts."

10   Williams, 529 U.S. at 413. On the other hand, a state court's decision is an "unreasonable application"

11   if the state court "identifies the correct governing legal principle from [the Supreme Court's] decisions

12   but unreasonably applies that principle to the facts of the prisoner's case." Id. The state court's

13   decision has to be more than erroneous or incorrect; rather, the application of federal law must be

14   "objectively unreasonable."  Lockyer v. Andrade, 538 U.S. 63, 75-76 (2003) (citations omitted).

15       The "clearly established" federal law, as determined by the Supreme Court of the United

16   States, "'refers to the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the

17   time of the relevant state-court decision.'" Carey v. Musladin, 549 U.S. 70, 74 (2006) (quoting

18   Williams, 529 U.S. at 412). However, Section 2254(d) "does not 'require state and federal courts to

19   wait for some nearly identical factual pattern before a legal rule must be applied.'" Panetti v.

20   Quarterman, 551 U.S. 930, 953 (2007) (quoting Musladin, 549 U.S. at 81 (Kennedy, J., concurring

21   in judgment)). Thus, habeas relief may be appropriate under the "unreasonable application" prong

22   when a state court violates the *legal principle* established by a Supreme Court decision, as long as that

23   legal principle is applicable to petitioner's claims without "tailoring or modification" of the standard.

24   Moses v. Payne, 555 F.3d 742, 753-54 (9th Cir. 2009) (citing Panetti, 551 U.S. 930, and Smith v.

25   Patrick, 508 F.3d 1256 (9th Cir. 2007)). Moreover, Ninth Circuit case law may be "persuasive

26   authority for purposes of determining whether a particular state court decision is an 'unreasonable

27   application' of Supreme Court law, and also may help [the Court] determine what law is 'clearly

28   established.'" Duhaime v. Ducharme, 200 F.3d 597, 600 (9th Cir. 2000) (citations omitted).

Finally, habeas relief is also available if the state court proceedings "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in state court." 28 U.S.C. § 2254(d)(2). A state court's decision will not be overturned unless the underlying factual determinations were "objectively unreasonable." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003). A federal court presumes the state court's factual findings are correct, and the petitioner may rebut the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

## DISCUSSION

Petitioner objects to the Magistrate Judge's recommendations on all three of his claims. The Court reviews *de novo* those portions of the R&R to which objections are made. 28 U.S.C. § 636(b)(1). The Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." Id.

In making its determination, the Court looks to the state's last reasoned decision. Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002) (citations omitted). Where there is no reasoned decision from the state's highest court, the Court "looks through" to the "last reasoned state court decision to address the claim at issue," which in this case is the Court of Appeal's decision. See Medley v. Runnels, 506 F.3d 857, 862 (9th Cir. 2007) (citing Ylst v. Nunnemaker, 501 U.S. 797, 804-06 (1991)).

## I.   Admission of prior uncharged sexual offenses

The Petition alleges the introduction of evidence of prior uncharged sexual offenses under Section 1108 violated Petitioner's constitutional right to due process and equal protection, and that the trial court abused its discretion in admitting that evidence under Section 352.[1] According to Petitioner, the purported uncharged offenses were different from the charged conduct because neither of those offenses involved physical assault, threat or use of force, or the infliction of any injuries.

---

[1] Section 1108 provides, in pertinent part: "In a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by Section 1101, if the evidence is not inadmissible pursuant to Section 352." CAL. EVID. CODE § 1108(a). The phrase "sexual offense" is defined in Section 1108(d)(1).

Section 352, in turn, provides: "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." Id. § 352.

Moreover, neither purported offense was reported to the law enforcement until after Petitioner's arrest in this case was publicized by the media. Finally, Petitioner argues the admission of the evidence was an abuse of discretion under Section 352 because the probative value was greatly outweighed by the fact that the purported offenses were unduly inflammatory, confusing, remote, and time consuming.

### A.   Due process

With respect to Petitioner's due process challenge, the Magistrate Judge correctly noted there is no Supreme Court precedent prohibiting the use of uncharged sexual offenses to prove propensity. See Estelle v. McGuire, 502 U.S. 62, 75 n.5 (1991) ("Because we need not reach the issue, we express no opinion on whether a state law would violate the Due Process Clause if it permitted the use of 'prior crimes' evidence to show propensity to commit a charged crime."); Larson v. Palmateer, 515 F.3d 1057, 1065-66 (9th Cir. 2008) (concluding that because the Supreme Court has "expressly reserved the question of whether using evidence of the defendant's past crimes to show that he has a propensity for criminal activity could ever violate due process," the state court "did not unreasonably apply clearly established federal law in determining that the admission of evidence of Larson's criminal history did not violate due process" (citations omitted)). Moreover, both the Ninth Circuit and California Supreme Court have expressly held that admission of prior sexual offense evidence under Section 1108 does not violate due process. See Mejia v. Garcia, 534 F.3d 1036, 1046-47 (9th Cir. 2008) (admission of propensity evidence pursuant to Section 1108 against a defendant charged with rape did not violate his clearly established due process rights); People v. Falsetta, 21 Cal. 4th 903, 917 (1999) ("In summary, we think the trial court's discretion to exclude propensity evidence under section 352 saves section 1108 from defendant's due process challenge.").

Petitioner's reliance on Chief Justice Warren's concurring and dissenting opinion in Spencer v. Texas, 385 U.S. 554, 574-75 (1967), is misplaced because such opinion cannot form the basis of "clearly established Federal law" as required by 28 U.S.C. § 2254(d). See Musladin, 549 U.S. at 74; Williams, 529 U.S. at 412. Likewise, Petitioner's reliance on People v. Guerrero, 16 Cal. 3d 719, 724 (1976), and People v. Terry, 2 Cal. 3d 362, 396 (1970), is unavailing because even though those cases held that evidence of other crimes is inadmissible to show propensity for crime, they do not prohibit such evidence from being used to prove other facts such as motive, knowledge, or intent. See, e.g.,

1    <u>Terry</u>, 2 Cal. 3d at 396 ("Although proof of involvement in prior crimes is not admissible merely to

2    show propensity for crime, such evidence is admissible to prove motive, knowledge, or intent when

3    such is an issue in the case." (internal citations omitted)). Moreover, both <u>Guerrero</u> and <u>Terry</u> were

4    decided before 1995, when the Legislature enacted Section 1108 "to expand the admissibility of

5    disposition or propensity evidence in sex offense cases." <u>See</u> <u>People v. Falsetta</u>, 21 Cal. 4th 903, 911

6    (1999) ("Available legislative history indicates section 1108 was intended in sex offense cases to relax

7    the evidentiary restraints section 1101, subdivision (a), imposed, to assure that the trier of fact would

8    be made aware of the defendant's other sex offenses in evaluating the victim's and the defendant's

9    credibility. In this regard, section 1108 implicitly abrogates prior decisions of this court indicating that

10   'propensity' evidence is per se unduly prejudicial to the defense." (citation omitted)).

11          Accordingly, the Magistrate Judge correctly concluded that the Court of Appeal's denial of

12   Petitioner's due process claim was not contrary to, or an unreasonable application of, clearly

13   established federal law as determined by the Supreme Court. <u>See</u> 28 U.S.C. § 2254(d)(1).

14          <u>B.</u>      <u>Equal protection</u>

15          With respect to Petitioner's equal protection challenge, the Magistrate Judge correctly

16   concluded that sex offenders do not constitute a "suspect class" and that there is no "fundamental

17   right" to have a trial free from relevant propensity evidence that is not unfairly prejudicial. <u>See</u> <u>United</u>

18   <u>States v. LeMay</u>, 260 F.3d 1018, 1030 (9th Cir. 2001). Accordingly, the Magistrate Judge properly

19   applied rational basis scrutiny to Petitioner's challenge. In the present case, the Court agrees with the

20   Magistrate Judge that the state has a "legitimate governmental interest" in prosecuting sexual offenses

21   effectively, and that Section 1108 is "rationally related" to meeting that interest. <u>See</u> <u>People v. Finch</u>,

22   55 Cal. App. 4th 172, 184-85 (1969) ("The Legislature determined that the nature of sex offenses, both

23   their seriousness and their secretive commission which results in trials that are primarily credibility

24   contests, justified the admission of relevant evidence of a defendant's commission of other sex

25   offenses. This reasoning provides a rational basis for the law."); <u>cf.</u> <u>LeMay</u>, 260 F.3d at 1031

26   (concluding that Federal Rule of Evidence 414, which allows admission of prior acts of child

27   molestation, was constitutional because the government had a legitimate interest in prosecuting crime

28   effectively, and Rule 414 furthered that interest by allowing admission of prior acts).

1    According, the Magistrate Judge correctly concluded that the Court of Appeal's denial of

2    Petitioner's equal protection claim was not contrary to, or an unreasonable application of, clearly

3    established federal law as determined by the Supreme Court. See 28 U.S.C. § 2254(d)(1).

4         C.    Abuse of discretion

5         The Magistrate Judge correctly concluded that Petitioner's claim that the trial court abused its

6    discretion in not excluding the evidence of prior incidents under Section 352 is not cognizable in a

7    federal habeas petition. The Supreme Court has reiterated that "'federal habeas corpus relief does not

8    lie for errors of state law,'" but rather is limited to "deciding whether conviction violated the

9    Constitution, laws, or treaties of the United States." McGuire, 502 U.S. at 67-68 (citations omitted)

10   (declining to address whether admission of prior injury evidence was proper under California law).

11        Moreover, even if Petitioner asserts a cognizable federal claim, the Magistrate Judge correctly

12   concluded that the trial court did not abuse its discretion in allowing the evidence under Section 352.

13   As the Court of Appeal noted, the trial court "issued a detailed, thoughtful, and complete Evidence

14   Code section 352 analysis in which it addressed each of the factors outlined in Falsetta."[2] (Lodgment

15   6, at 22.) The Court of Appeal agreed with the trial court that while the charged and uncharged

16   offenses were not identical, they shared similarities, and the uncharged offenses had significant

17   probative value in proving Petitioner's commission of the charged sexual offenses. (Id. at 22-23.)

18   Finally, the Court of Appeal concluded the trial court properly considered the Falsetta factors both in

19   favor of and against admission of the evidence. (See id. at 22-24; Lodgment 14, at 153-60.)

20        Contrary to Petitioner's objections, the trial court gave serious consideration to the likelihood

21   the jury might be distracted by or misapply the evidence of prior incidents, as well as the fact that the

22

23        [2] In Falsetta, the California Supreme Court set forth a number of factors the court should
     consider in determining whether to admit or exclude evidence under Section 352:

24

25        Rather than admit or exclude every sex offense a defendant commits, trial judges must
          consider such factors as its nature, relevance, and possible remoteness, the degree of
25        certainty of its commission and the likelihood of confusing, misleading, or distracting
          the jurors from their main inquiry, its similarity to the charged offense, its likely
26        prejudicial impact on the jurors, the burden on the defendant in defending against the
          uncharged offense, and the availability of less prejudicial alternatives to its outright
27        admission, such as admitting some but not all of the defendant's other sex offenses, or
          excluding irrelevant though inflammatory details surrounding the offense.

28
     21 Cal. 4th at 917 (citations omitted).

1   presentation of the evidence might be time consuming. (See Lodgement 14, at 157-60.) The trial court

2   also took into consideration that these were prior *uncharged* offenses, which were not reported to the

3   law enforcement until after Petitioner was arrested in this case. (See id. at 156-57.) At trial, to reduce

4   any prejudicial effect to Petitioner, the trial court instructed the jury pursuant to Judicial Council of

5   California Criminal Jury Instructions regarding the limited purposes for which it could consider the

6   evidence of uncharged offenses. (See Lodgment 6, at 21.) Based on the foregoing, the Court of Appeal

7   concluded the trial court did not abuse its discretion in admitting the evidence. (Id. at 24.)

8          Having reviewed the trial record and the Court of Appeal's decision, the Court agrees with the

9   Magistrate Judge that the Court of Appeal's denial of Petitioner's abuse of discretion claim was not

10  contrary to, or an unreasonable application of, clearly established federal law as determined by the

11  Supreme Court. See 28 U.S.C. § 2254(d)(1).

12  **II.       Insufficient evidence to support the conviction for torture**

13         The Petition next alleges Petitioner's due process rights were violated because the evidence

14  was insufficient to support a conviction beyond a reasonable doubt for torture under Section 206.

15  Section 206 provides that "[e]very person who, with the intent to cause cruel or extreme pain and

16  suffering for the purpose of revenge, extortion, persuasion, or for any sadistic purpose, inflicts great

17  bodily injury . . . upon the person of another, is guilty of torture." CAL. PENAL CODE § 206. According

18  to Petitioner, the evidence did not prove beyond a reasonable doubt that he intended to cause cruel and

19  extreme pain, or that he did so for any sadistic or vengeful purpose.

20         The Due Process Clause guarantees that a criminal defendant may only be convicted "upon

21  proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is

22  charged." In re Winship, 397 U.S. 358, 364 (1970). As the Magistrate Judge correctly noted, the

23  sufficiency of evidence is reviewed by the federal court in a very deferential manner. The relevant

24  inquiry is "whether, after viewing the evidence in the light most favorable to the prosecution, *any*

25  rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."

26  Jackson v. Virginia, 443 U.S. 307, 319 (1979) (citation omitted) (emphasis in original). Habeas relief

27  is appropriate only "if it is found that upon the record evidence adduced at the trial no rational trier

28  of fact could have found proof of guilt beyond a reasonable doubt." Id. at 324.

The Magistrate Judge correctly stated that courts have interpreted intent to inflict "cruel" pain and suffering as "intent to inflict extreme or severe pain." See People v. Burton, 143 Cal. App. 4th 447, 452 (2006). "Absent direct evidence of such intent, the circumstances of the offense can establish the intent to inflict extreme or severe pain." Id. (citations omitted). Thus, an inference of an intent to cause extreme pain can be made when the defendant focuses his attack on a particularly vulnerable area, such as the face, rather than indiscriminately attacking the victim. See, e.g., People v. Hamlin, 170 Cal. App. 4th 1412, 1429-31 (2009) (necessary intent was present when defendant intentionally targeted areas of victim's body where he had already injured her); Burton, 143 Cal App. 4th at 452-53 (inflicting three to four deep cuts to victim's face that left her permanently disfigured was sufficient to find the necessary intent); People v. Quintero, 135 Cal. App. 4th 1152, 1163 (2006) (sufficient intent found where defendant focused his attacks on the victim's head, using deliberate uppercut motions to slash the victim's face many times with a retractable bladed knife).

In the present case, viewing the evidence in the light most favorable to the verdict, there was ample evidence for the jury to conclude Petitioner attacked Jacqueline T. with "the intent to cause cruel or extreme pain and suffering for the purpose of revenge, extortion, persuasion, or for any sadistic purpose." See CAL. PENAL CODE § 206. As the Magistrate Judge observed, Petitioner punched Jacqueline in the face without a warning when she was sitting in her car talking on the phone. (See Lodgment 6, at 4.) Petitioner continued to punch her between 5 and 10 more times, before he told her to "get in the back seat of the fucking car." (Id.) After she complied, Petitioner yelled at her that she got blood on his jacket, and proceeded to punch her several more times. (Id.) Jacqueline was able to get out of the car, but Petitioner followed her. (Id.) When Petitioner caught up with her, he apparently grabbed her by the back of her neck and slammed her head against a metal railing, knocking out a tooth and breaking a bone in her jaw. (Id. at 5.) According to the responding police officer, Jacqueline's injuries were the second worst he had seen in his 20 years in law enforcement. (Id. at 6.) Jacqueline suffered a six centimeter laceration to her lip and the inside of her mouth, two nasal fractures, a cheek bone fracture, a hematoma to her ear, blunt trauma to her eyeball, dental trauma, bruising to her neck, and bruising and swelling throughout her face. (Id. at 5-6.)

The Court agrees with the Magistrate Judge that the severity of the injuries in this case and the fact that they were concentrated on a vulnerable part of the victim's body–i.e., the face–provide sufficient circumstantial evidence of Petitioner's "intent to inflict extreme or severe pain." See Burton, 143 Cal. App. 4th at 452. Moreover, as the Magistrate Judge noted, there were breaks between Petitioner's attacks, and he also had time to reflect. For example, during the attack at the railing, Petitioner was composed enough to interact with the neighbors, who described Petitioner as "very calm." (See Lodgment 6, at 5.) This critically undercuts any argument that Petitioner's attacks were the result of blind anger. See People v. Massie, 142 Cal. App. 4th 365, 372-73 (2006) (necessary intent found where the attack went on for a significant period of time, involved different episodes with breaks in between, and where defendant manufactured a weapon by breaking the glass from a picture frame, which indicated a thought process rather than blind rage).

Petitioner's verbatim recitation of Judge Aaron's opinion in his objections to the R&R is unavailing. (Compare Petitioner's Objections to R&R, at 1-14, with Lodgment 6, at 1-14 (Aaron, J., concurring in part and dissenting in part).) First, Petitioner argues his actions–although brutal–did not constitute the type of "extremely severe, inhumane conduct" the electorate intended to prohibit through the enactment of Section 206. According to Petitioner, Section 206 was enacted in response to the facts in People v. Singleton, 112 Cal. App. 3d 418 (1980), where the defendant was sentenced to only 14 years and 4 months in prison "for kidnapping and sexually abusing his victim and then chopping off her hands and dumping her in a ditch in a remote location." However, nothing in Section 206 requires the infliction of any particular injury or that the victim suffer actual pain. See People v. Pre, 117 Cal. App. 4th 415, 419-20 (2004). Rather, as the Court of Appeal concluded, "[h]ad the voters intended to require extreme injuries, such as chopping off arms, as in the Singleton case, they could have so provided, but they did not." Lodgment 6, at 17; see also Pre, 117 Cal. App. 4th at 423 (noting that a torture conviction under Section 206 will not be reversed solely because the injuries suffered were less extreme than in the Singleton case or other torture cases).

Second, Petitioner's argument that "the electorate evinced the intention to restrict torture prosecutions to those cases in which truly substantial evidence of the proscribed depraved intent exists" is contrary to the predominant case law, which provides that circumstantial evidence can

establish the intent to inflict extreme or severe pain. See, e.g., Hamlin, 170 Cal. App. 4th at 1426; Burton, 143 Cal App. 4th at 452; Quintero, 135 Cal. App. 4th at 1162; Pre, 117 Cal. App. 4th at 420-21. Finally, Petitioner alleges there was insufficient evidence because the attack lasted only 30 minutes, and he did not use a weapon, make a statement that evinced an intention to inflict extreme pain, or inflict pain on an incapacitated victim. However, as the Magistrate Judge noted, the relevant inquiry is not whether *this* Court believes the evidence was sufficient to sustain a torture conviction, but rather whether *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See Jackson, 443 U.S. at 319. In the present case, as already described, there was sufficient evidence that if believed by the jury would have established the necessary intent.

Accordingly, the Magistrate Judge correctly concluded that the Court of Appeal's denial of Petitioner's insufficient evidence claim was not contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court. See 28 U.S.C. § 2254(d)(1).

## III.     Right to confront under the Sixth Amendment

Finally, the Petition alleges the trial court deprived Petitioner of his Sixth Amendment right to confrontation when it improperly restricted his ability to cross-examine Monique, a woman who claimed she was the victim of one of the prior uncharged sex offenses. According to Petitioner, he attempted to impeach Monique by inquiring into her relationship with her ex-boyfriend during a period of time prior to her interaction with Petitioner in February 2005. Petitioner argues the evidence would have established a motive to fabricate the allegations against him.

### A.     Court of Appeal's application of federal law was "objectively unreasonable"

The Confrontation Clause provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. CONST. amend. VI. "Confrontation means more than being allowed to confront the witness physically. '[Supreme Court] cases construing the (confrontation) clause hold that a primary interest secured by it is the right of cross-examination.'" Davis v. Alaska, 415 U.S. 308, 315 (1974) (quoting Douglas v. Alabama, 380 U.S. 415, 418 (1965)). However, the right to cross-examination is not absolute. Trial judges "retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness'

safety, or interrogation that is repetitive or only marginally relevant." <u>Delaware v. Van Arsdall</u>, 475 U.S. 673, 679 (1986). Thus, "'the Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.'" <u>Id.</u> (quoting <u>Delaware v. Fensterer</u>, 474 U.S. 15, 20 (1985) (per curiam)) (emphasis in original). The relevant question is whether "[a] reasonable jury might have received a significantly different impression of [the witness's] credibility had [defendant's] counsel been permitted to pursue his proposed line of cross-examination." <u>Id.</u> at 680; <u>accord</u> <u>People v. Quartermain</u>, 16 Cal. 4th 600, 623-24 (1997) (citations omitted).

Having reviewed the R&R and Petitioner's objections, the Court disagrees with the Magistrate Judge's recommendation that Petitioner's proffered evidence was irrelevant and more prejudicial than probative. As the Supreme Court has stated on numerous occasions, motive to fabricate–especially by an alleged victim of a sex offense–is almost always relevant, <u>See, e.g.</u>, <u>Olden v. Kentucky</u>, 488 U.S. 227, 232 (1988) (per curiam) (finding relevant petitioner's theory of the case that the victim concocted the rape story to protect her relationship with her lover who would have grown suspicious upon seeing her disembark from petitioner's car); <u>Davis</u>, 415 U.S. at 316 ("The partiality of a witness is subject to exploration at trial, and is 'always relevant as discrediting the witness and affecting the weight of his testimony.'" (citing 3A J. WIGMORE, EVIDENCE § 940, p. 775 (Chadbourn rev. 1970))).

Moreover, a reasonable jury would have received a "significantly different impression of [Monique's] credibility" had Petitioner been permitted to pursue his proposed line of cross-examination. <u>See</u> <u>Van Arsdall</u>, 475 U.S. at 680; <u>Quartermain</u>, 16 Cal. 4th at 623-24. In the present case, Petitioner's counsel sought to offer evidence that Monique has previously obtained a restraining order against her ex-boyfriend, William Viltz, after he grabbed her by the neck and lifted her off the ground. (<u>See</u> Lodgment 14, at 127.) After Monique went missing following her encounter with Petitioner, police contacted Viltz to see if he was responsible for her disappearance. (<u>Id.</u> at 129.) Monique also testified that Viltz might have been the first person she told the alleged truth about her incident with Petitioner. (<u>Id.</u> at 128.) According to Petitioner, the restraining order and the pending charges against Viltz at the time Monique had the encounter with Petitioner provided her with the

motivation to fabricate the story in order to avoid retaliation by Viltz for sleeping with Petitioner. (See Lodgment 11, at 902-05; Lodgment 13, at 1206-13.)

Both the trial court and the Court of Appeal rejected this argument, noting that even if relevant, the evidence did not explain why Monique waited 14 months before reporting the incident to the police. (See Lodgment 13, at 1212-13; Lodgment 6, at 31-33.) However, as the Supreme Court has reiterated, the court "cannot speculate as to whether the jury, as sole judge of the credibility of a witness, would have accepted this line of reasoning had counsel been permitted to fully present it." Davis, 415 U.S. at 317. Here, the proffered evidence might reasonably have influenced the jury's assessment of Monique's reliability or credibility.[3] See, e.g., Fowler v. Sacramento County Sheriff's Dep't, 421 F.3d 1027, 1039-40 (9th Cir. 2005) (concluding the state court erred in excluding proffered cross-examination of the alleged child molestation victim, which attempted to show the victim overreacted or lied in prior incidents). Accordingly, "the jurors were entitled to have the benefit of the defense theory before them so that they could make an informed judgment as to the weight to place on [Monique's] testimony." See Davis, 415 U.S. at 317 (quoting Douglas, 380 U.S. at 419).

The other grounds underlying the decision to exclude the proffered evidence are inapposite. First, the fact that Monique also denied being scared of Viltz at the time of the incident with Petitioner, or that there was no evidence she had further contact with Viltz prior to contacting the police 14 months later, goes to the *weight* of the proffered evidence, not its admissibility. See id. at 317-18. Similarly, the trial court erred in concluding the evidence was more prejudicial than probative because it would "dirty up that witness." (See Lodgment 13, at 1212.) As the Ninth Circuit noted in a similar case, "[a]ny disgust or hostility that jurors might have felt would have been lodged not with [Monique], but with [Viltz]." See Fowler, 421 F.3d at 1040-41 (citing LaJoie v. Thompson, 217 F.3d 663, 673 (9th Cir. 2000)). "Indeed, if anything, the jurors would have been more likely to sympathize with [Monique]." See id. at 1041. Accordingly, the Court of Appeal's decision to affirm the trial

---

[3] The Court's conclusion is reinforced by the prosecutor's statement during closing argument, where the prosecutor argued that "[t]he defendant has shown no motive for them [Jacqueline P. and Monique] to make any of this up." (See Lodgement 6, at 29.) At trial, Petitioner objected to this as being misleading. (See id.) The Court agrees that had Petitioner's counsel been able to pursue his proposed line of cross-examination, the prosecutor would not have been able to make this statement to the jury during the closing argument, and the jury could then have reasonably been left with a different impression of Monique's credibility or reliability.

court's exclusion of all evidence of the restraining order against Viltz as well as the criminal charges against him was an "objectively unreasonable" application of clearly established federal law. See Andrade, 538 U.S. at 75-76; Fowler, 421 F.3d at 1038-41. "There can be no doubt that the precluded cross-examination sufficiently bore on [Monique's] reliability or credibility such that a jury might reasonably have questioned it." See Fowler, 421 F.3d at 1041.

        **B.**      **The challenged error was harmless beyond a reasonable doubt**

Having determined Petitioner was denied his Sixth Amendment right to cross-examination, the Court must next decide whether the error was harmless "assuming that the damaging potential of the cross-examination [was] fully realized." See Van Arsdall, 475 U.S. at 684. "In a federal habeas proceeding, constitutional error is harmless unless it had substantial and injurious effect or influence in determining the jury's verdict." Fowler, 421 F.3d at 1041 (internal quotation marks and citation omitted). Relevant factors to consider include:

> [1] the importance of the witness' testimony in the prosecution's case, [2] whether the testimony was cumulative, [3] the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, [4] the extent of cross-examination otherwise permitted, and, of course, [5] the overall strength of the prosecution's case.

Van Arsdall, 475 U.S. at 684 (citation omitted) (listing factors relevant on direct review to whether a violation of defendant's Sixth Amendment right was harmless beyond a reasonable doubt).

In the present case, the challenged error was harmless. As the Court of Appeal indicated when it was considering the admission of the prior uncharged offenses, Monique's testimony was relevant "to show [Petitioner] had an intent to engage in sexual conduct with Jacqueline [T]." (See Lodgment 6, at 24.) This intent, however, was already clear from other evidence presented at trial, such as "his kissing [of Jacqueline] while in the bar, kissing her on the chest after raising her shirt while in his truck, his willingness to pursue this sexual interest even after Jacqueline complained to her friend that he would not leave her alone, and his attempt at putting his hand down her pants." (See id.) Accordingly, the excluded evidence was important solely to the issue of intent, and it was nonetheless cumulative on that issue. Moreover, as the Court of Appeal noted, "it is apparent the jury, by acquitting [Petitioner] of attempted forcible rape and convicting him of assault with intent to commit rape or penetration with a foreign object, gave little weight to the prior offenses and instead focused

1  on Jacqueline's testimony that he attempted to put his hand down her pants." (See id.) Finally, as

2  already indicated, the proffered evidence would have been contradicted by Monique's testimony that

3  she was not afraid of Viltz at the time of the incident. (See Lodgment 14, at 129-30.)

4        For the foregoing reasons, even though the trial court precluded complete examination on this

5  issue, Petitioner has made no showing that the proffered evidence was important to the prosecution's

6  case as a whole or non-cumulative on the issue of intent to commit a sex offense against Jacqueline,

7  or that the prosecution's case was weak without this evidence. On the contrary, the excluded evidence

8  appears to have been both non-crucial to the final verdict as well as cumulative on the issue of intent.

9  Accordingly, although the trial court violated Petitioner's Sixth Amendment right to cross-

10  examination when it prevented him from cross-examining Monique as to her motive to fabricate, the

11  error was "harmless beyond a reasonable doubt." See Van Arsdall, 475 U.S. at 684.

12  **IV.    Certificate of appealability**

13        A petitioner complaining of detention arising from state court proceedings must obtain a

14  certificate of appealability ("COA") to file an appeal of the final order in a federal habeas proceeding.

15  28 U.S.C. § 2253(c)(1)(A). The court may issue a COA only if the petitioner "has made a substantial

16  showing of the denial of a constitutional right." Id. § 2253(c)(2). To make a "substantial showing,"

17  the petitioner must demonstrate that "reasonable jurists would find the district court's assessment of

18  the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). In the

19  present case, the Court finds Petitioner has made a "substantial showing" of the denial of his

20  constitutional rights and therefore GRANTS a COA with respect to all of Petitioner's claims.

21                         **CONCLUSION**

22        For the foregoing reasons and based upon the Court's review of the entire Report and

23  Recommendation, the Court **ADOPTS IN PART** the Report and Recommendation, enters the

24  judgment **DENYING** and **DISMISSING** the petition, and **GRANTS** a certificate of appealability.

25        **IT IS SO ORDERED.**

26

27  **DATED:  February 24, 2010**

28  IRMA E. GONZALEZ, Chief Judge
     United States District Court